IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| JUAN BAUTISTA SERPAS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | 1:25-cv-02369-AJT-WBP |
| JOSEPH SIMON, *et al.*, | ) | |
| | ) | |
| Respondents. | | |

## ORDER

Before the Court is Petitioner Juan Bautista Serpas' Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 seeking release from Immigration and Customs Enforcement ("ICE") custody that began on December 12, 2025 on the grounds that his ongoing detention at Riverside Regional Jail violates the Immigration and Nationality Act (the "INA"), his constitutional due process rights, and the *Accardi* doctrine. Upon consideration of the Petition, the memoranda in support thereof, [Doc. Nos. 1, 13], and in opposition thereto, [Doc. Nos. 8, 11], and for the reasons stated below, the Petition is GRANTED.

## I.    BACKGROUND

Petitioner is a citizen of El Salvador who entered the United States before 2013 without being admitted or paroled by an immigration officer. [Doc. No. 1] ¶ 32; [Doc. No. 8-1] ¶ 6. On May 22, 2013, an ICE agent encountered Petitioner and the same day, Petitioner was issued a Notice to Appear ("NTA") charging him with being inadmissible to the United States (and thus removable from the United States) under 8 U.S.C. § 1182(a)(6)(A)(i), as a noncitizen present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General. [Doc. No. 8-1] ¶ 7. On April 3,

2014, Petitioner filed a Form I-589 Application for Asylum and Withholding of Removal, which an Immigration Judge denied on July 21, 2017, and ordered Petitioner removed from the United States, but granted Petitioner's application of Withholding of Removal from El Salvador. *Id.* ¶ 10. Neither party appealed that decision and on August 21, 2017, the Immigration Judge's decision became administratively final. *Id.* ¶ 11. In 2018, Petitioner was placed on an Order of Supervision, which he has fully complied with. [Doc. No. 1] ¶ 34. Since being granted withholding of removal in 2017, Petitioner has repeatedly been issued "category A10" Employment Authorization Documents (EAD), which requires a finding that the Petitioner "cannot be removed due to the refusal of all countries designated by the [noncitizen] or under this section to receive the [noncitizen]," 8 U.S.C. § 1231(a)(7)(A). *Id.* ¶ 35.

On December 12, 2025, while attending a regularly scheduled check-in with ICE, Petitioner was taken into custody and transported to Riverside Regional Jail in Prince George County, VA, where Petitioner remains detained. *Id.* ¶ 36. On December 22, 2025, DHS issued Petitioner a Notice of Removal informing him of DHS' intent to remove him to Mexico. [Doc. No. 8-3]. On December 30, 2025, U.S. Citizenship and Immigration Services ("USCIS") conducted a third country fear screening as Petitioner claimed fear of being removed to Mexico, and USCIS determined that Petitioner failed to establish that he will more likely than not be persecuted or tortured in Mexico. [Doc. No. 8-2] at 3. On December 31, 2025, DHS issued a notice revoking Petitioner's Order of Supervised Release. [Doc. No. 11-1].

## II.    LEGAL STANDARD

"A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States.'" *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations omitted).

2

## III.   DISCUSSION

Petitioner contends that (1) his detention violates the INA and his due process rights; (2) the revocation of his order of supervision violates the INA's implementing regulations and the *Accardi* doctrine; and (3) Petitioner's removal to a Mexico (a third-country not identified on his removal order) without Immigration Judge review of his fear claim violates his due process rights. [Doc. No. 1] at 11–14. In opposition, Respondents submit that the Court should decline to exercise jurisdiction over the Petition as a matter of comity because of the ongoing litigation in *D.V.D. v. DHS*, 2025 WL 1142968 (D. Mass. 2025). On the merits, Respondents contend that Petitioner's detention is lawful because it does not violate Section 1231 or *Zadvydas v. Davis*; that the revocation of Petitioner's Order of Supervision comports with the governing regulations; and that Petitioner is not entitled to Immigration Judge review of his negative fear determination of removal to Mexico. [Doc. No. 8]. The Court addresses each argument in turn.

A.   Jurisdiction in light of ongoing *D.V.D.* litigation.

As an initial matter, Respondents submit that Petitioner's membership in the *D.V.D.* class bars review of his claims before this Court. [Doc. No. 8] at 9–12. Petitioner, in Reply, contends that because there has not been a final judgment yet on the merits in *D.V.D.*, there is no preclusive effect of that litigation that is binding on Petitioner. [Doc. No. 13] at 10. He further submits that compelling circumstances justify any countervailing interests of comity and judicial economy. *Id.* at 11.

In *D.V.D. v. U.S. Dep't of Homeland Sec.*, five noncitizens filed a class action for declaratory and injunctive relief against DHS and others for violating procedural due process by planning to remove noncitizens to a third country without first providing notice and an opportunity to apply for protection from removal to that country. 778 F. Supp. 3d 355 (D. Mass. 2025). On

3

April 18, 2025, the District Court of Massachusetts granted the plaintiffs' class certification and a preliminary injunction, requiring DHS to comply with certain procedures before initiating removal to a third country. *Id.* at 393–94. The class consists of:

> All individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed.

*Id.* at 378. On June 23, 2025, the Supreme Court granted the Government's application to stay the preliminary injunction, which is currently on appeal before the First Circuit. *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025).

As Petitioner notes, there has been no final judgment on the merits in *D.V.D.* and there is thus no *res judicata* effect of any decision that prevents this Court's review of Petitioner's claims. *See Brown v. Felsen*, 442 U.S. 127, 131 (1979) (res judicata requires a "final judgment on the merits"). The Court further concludes there are compelling circumstances to consider Petitioner's claims. Petitioner brings claims concerning his ongoing detention, the revocation of an order of supervision, and his removal to a third country under the due process clause, the INA, and the governing regulations that are substantively different than the claims at issue in *D.V.D.*, which largely focused on what procedural due process protections noncitizens subjected to a third-country removal are entitled to. *D.V.D.*, 778 F. Supp. 3d at 387–90. As other courts have concluded, "to dismiss Petitioner's claims for [] relief at this time would effectively preclude [Petitioner] from the relief he seeks entirely and potentially foreclose any relief that he could be entitled to as part of the *D.V.D.* class if he is removed before the class-wide claims are resolved." *Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1008 (S.D. Tex. 2025); *Santamaria Orellana v. Baker*, No. CV 25-1788-TDC, 2025 WL 2841886, at *11 (D. Md. Oct. 7, 2025). Nor does the Supreme

4

Court's stay of the district court's preliminary injunction change this Court's disposition since, as other courts have observed, the Supreme Court has not offered any analysis of its stay, let alone opined on whether the stay was based on the merits or the procedural posture of the case. *Santamaria Orellana*, 2025 WL 2841886, at *11 ("[B]ased on the presently available guidance from the Supreme Court, there is an insufficient basis upon which to reach a conclusion on which aspects of *D.V.D.* the Supreme Court has rejected, whether they relate to the class certification, the due process claim, or otherwise."); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 731 (W.D. Wash. 2025) ("The Supreme Court did not decide *D.V.D.* on the merits, nor did it even necessarily rule on the class's likelihood of success on its due process and APA claims."). Therefore, the Court declines to dismiss Petitioner's claims on the grounds that he is a member of the class in the *D.V.D.* litigation.

 B. <u>Petitioner's due process claims concerning his ongoing detention.</u>

In Counts One and Two, Petitioner claims that his ongoing detention, which began on December 12, 2025, violates his due process rights because Respondents have failed to demonstrate any significant likelihood of removal in the reasonably foreseeable future, as required by 8 U.S.C. § 1231 and the Supreme Court's pronouncements in *Zadvydas v. Davis*. [Doc. No. 1] at 11–12.

Under 8 U.S.C. § 1231, which applies to individuals like Petitioner that have a final order of removal, noncitizens shall be detained during the ninety (90) day "removal period" in order to execute their removal, and certain noncitizens may be detained "beyond the removal period."[1] 8

---

[1] Under the statute, the removal period begins on the latest of the following: (i) the date the order of removal becomes administratively final; (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or (iii) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(B).

U.S.C. § 1231(a)(1)-(2), (6). The statute is silent as to how long an individual can be detained for, a question the Supreme Court considered in *Zadvydas v. Davis*, where it held that detention pursuant to Section 1231 must be "only for a period *reasonably necessary* to secure the [noncitizen's] removal," and that the detention of a post-removal order noncitizen is "presumptively reasonable" for six months, after which an individual is entitled to habeas relief upon demonstration that the detention is "indefinite"—*i.e.*, that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. 678, 682, 699–701 (2001); *see also Clark v. Suarez–Martinez*, 543 U.S. 371, 377–78 (2005) (extending *Zadvydas* to noncitizens ordered removed who are inadmissible under § 1182). "If the [noncitizen] makes these prima facie showings, the burden shifts to the government to provide evidence in rebuttal." *Menghua Wan v. Crawford*, 2014 WL 970180, at *3 (E.D. Va. Mar. 12, 2014) (citing *Zadvydas*, 533 U.S. at 701).

Both parties agree that Petitioner's removal period began on August 21, 2017, when the time to appeal the Immigration Judge's removal order elapsed and the order became administratively final, and ended on November 19, 2017–ninety days after Petitioner's order of removal became final. *See* 8 U.S.C. § 1231(a)(1)(B); [Doc. No. 1] ¶ 42; [Doc. No. 8-2] ¶ 11. Petitioner was not detained for the purpose of enforcing his final removal order until December 12, 2025. [Doc. No. 1] ¶ 36. Petitioner's detention, which has lasted almost two months, thus presents two questions: (1) whether Petitioner can be detained at all pursuant to section 1231 and (2) whether Petitioner's detention violates his due process rights under the *Zadvydas v. Davis* standard.

As to the first question, this Court has previously recognized that since "the Supreme Court has been silent on *when* the government's power to detain aliens ordered removed must be

6

exercised . . . the government's failure to detain the Petitioner during the removal period or immediately thereafter does not eliminate the Government's ability to detain Petitioner for the purpose of enforcing that removal order at this time." *Piao v. Lyons*, No. 1:25-CV-1725, 2025 WL 3046783, at *2 (E.D. Va. Oct. 31, 2025) (emphasis in original). Therefore, Petitioner's detention is authorized under the statute even though Petitioner's removal period has elapsed and the remaining question is whether Petitioner's detention satisfies due process.

In that regard, Respondents contend that Petitioner's detention, which has lasted for less than two months, remains presumptively reasonable under *Zadvydas*, and that Petitioner has failed to demonstrate that "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701; [Doc. No. 8] at 13–16. The Court disagrees. As other courts in this Circuit have recognized, the Supreme Court in *Zadvydas* did not announce a categorical bar on challenging detention prior to six months, but rather a rebuttable presumption that 180 days of detention is reasonable. *Zadvydas*, 533 U.S. at 701; *Portela-Hernandez v. Trump*, No. 25-1633-BAH, 2026 WL 74042, at *8 (D. Md. Jan. 9, 2026) ("The *Zadvydas* presumption is rebuttable, and if [Petitioner] can prove that his removal is not reasonably foreseeable, then he can overcome that presumption.") (internal citations omitted); *Zavvar v. Scott*, 2025 WL 2592543, at *6 (D. Md. Sept. 8, 2025) (holding that *Zadvydas*'s six-month presumption is rebuttable).

The Court further concludes that Petitioner has sufficiently demonstrated that there "is no significant likelihood of removal in the reasonably foreseeable future" to rebut the presumption that his detention is reasonable. *Zadvydas*, 533 U.S. at 701. Petitioner has been granted withholding of removal as to El Salvador, the only country to which Petitioner has a claim to citizenship or legal immigration status. Indeed, on several occasions, including as recently as September 2022, when Petitioner's employment authorization was renewed, the government has

7

concluded that Petitioner was not removable to any country. [Doc. No. 1] ¶ 35; [Doc. No. 13] at 18; 8 U.S.C. § 1231(a)(7) (providing that any noncitizen ordered removed is not eligible to receive employment authorization unless the "Attorney General makes a *specific* finding that—(A) the [noncitizen] cannot be removed due to the refusal of all countries designated by the alien or under this section to receive the alien") (emphasis added).

Respondents now contend that it has identified Mexico as a country of removal but that process is still in nascent stages with it being unclear whether Respondents have even obtained Mexico's affirmative assent to Petitioner's removal. As a result, the Court finds Respondents' submission insufficient to demonstrate that Petitioner's removal is reasonably foreseeable at this time. Moreover, as discussed below, *infra section* III. D, even if Mexico agrees to accept Petitioner, he is still entitled to Immigration Judge review of his fear-of-removal claim. *Zavvar*, 2025 WL 2592543, at *8 ("The fact that [Petitioner] likely will have the opportunity to seek further relief from the Immigration Court, and then potentially file appeals from any adverse rulings, further demonstrates that removal is not likely in the reasonably foreseeable future."); *Portela-Hernandez v. Trump*, 2026 WL 74042, at *14 (holding that "immigration judge review is necessary to meet the minimum requirements of constitutional due process" and absent such review "removal cannot be reasonably foreseeable"). Since Petitioner has established that there is no significant likelihood that he will be removed in the reasonably foreseeable future, the Court concludes that his detention violates due process.

C. Revocation of Petitioner's Order of Supervision.

In Count Four, Petitioner claims that the revocation of his Order of Supervision violates the INA Regulations, 8 C.F.R. §§ 241.4(*l*), 287.8, and 287.3, and the *Accardi* doctrine, which

requires an agency to follow its own procedures and regulations.[2] *See Nader v. Blair*, 549 F.3d 953, 962 (4th Cir. 2008) ("[W]hen an agency fails to follow its own procedures or regulations, that agency's actions are generally invalid.").

The INA's implementing regulations provide that a noncitizen "who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody" and that the noncitizen "will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(*l*)(1). Separately, the "Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody [a noncitizen] previously approved for release under the procedures in this section." 8 C.F.R. § 241.4(*l*)(2). And "[a] district director may also revoke release of [a noncitizen] when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." *Id.* Finally, if the noncitizen is not released from custody following the "informal interview" described above, the regulations provide for a "normal review process" of the custody determination within three months after release is revoked. *Id.* § 241.4(*l*)(3).

Here, Petitioner was detained on December 12, 2025, but Respondents did not formally revoke Petitioner's Order of Supervision until December 31, 2025, almost two weeks after Petitioner was detained, when it issued a "Notice of Revocation of Release" pursuant to 8 C.F.R. § 241.4(*l*). [Doc. No. 11-1] at 2. For this two-and-a-half-week period, Respondents failed to comply with 8 C.F.R. § 241.4(*l*)(1), which requires them to provide a notice stating the reasons for

---

[2] Because the Court concludes that Respondents violated 8 C.F.R. § 241.4(*l*), it does not address Petitioner's arguments with respect to 8 C.F.R. §§ 287.8 and 287.3.

the revocation or release and an initial informal interview to afford the noncitizen to respond to the reasons for revocation.[3]

Putting aside issues about whether Respondents can retroactively comply with the regulations, the Court finds that the December 31, 2025 revocation is deficient because it fails to make the required finding that the Executive Associate Commissioner could not be involved in the decision due to extenuating circumstances. *See* 8 C.F.R. § 241.4(l)(2) (authorizing district director to revoke release where "in the district director's opinion, revocation is in the public interest *and* circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner") (emphasis added). The December 31, 2025 revocation, signed by the field office director for the Washington Field Office, states that the decision to revoke Petitioner's order of supervision was "based on a review of [his] file and/or his personal interview, in light of [his] criminal history and unlawful entry into the United States." [Doc. No. 11-1] at 2. No finding was provided as to why revocation of the order of supervision serves the public interest, or why circumstances did not reasonably permit referral of the case to the Executive Associate Commissioner, as required by 8 C.F.R. § 241.4(l)(2). And although Respondents could well have made such a determination, the Court cannot infer that to be the case—nor is it required to do so— where the regulations require such a determination. Indeed, as another Court in this Circuit has concluded, the requirement that a senior official "make the determination to revoke release—that is, to restrict a person's liberty—is not merely a housekeeping requirement" but instead "part of a procedural framework, designed to insure the fair processing of an action affecting an individual,

---

[3] Both parties submit that, prior to the issuance of the December 31, 2025 revocation, Respondents attempted to revoke Petitioner's order of supervision on December 25, 2025. *See* [Doc. No. 13] at 14 (citing to [Doc. No. 11-1]); [Doc. No. 8] at 16–17 (citing to "FREX 2, 4" and noting that Respondents executed a "new" revocation notice). This initial order of revocation appears nowhere in the record and thus the Court does not address arguments pertaining to its propriety.

a violation of which can be deemed to be prejudicial and thus to implicate due process." *Santamaria Orellana*, 2025 WL 2841886, at *5. Moreover, although the December 31, 2025 revocation order states that Petitioner will be "promptly [] afforded an informal interview," [Doc. No. 11-1] at 2, there is no indication on the record that any such informal interview pursuant to 8 C.F.R. § 241.4(*l*)(1) has taken place, or that the "normal review process," ordinarily to occur within three months after release is revoked, pursuant to 8 C.F.R. § 241.4(*l*)(3) has been initiated. Therefore, this Court concludes that the December 31, 2025 revocation was unlawful under the *Accardi* doctrine.

D.   Reasonable Fear Interview.

In Count Five, Petitioner claims that he is entitled to immigration judge review of the asylum officer's negative fear determination of his removal to Mexico. [Doc. No. 1] at 14. Respondents submit that the regulations do not entitle Petitioner to review by an immigration judge of a negative finding regarding fear of being removed to a third-country not identified on the reinstated removal order. [Doc. No. 8] at 20–25. The Court has previously rejected Respondents position in *Juarez Villatro v. Noem*, where the Court ordered the government to afford immigration judge review of the petitioner's removal to a third country not identified in the petitioner's removal order. Civ. No. 1:25-cv-2359, Dkt. No. 17, Order (E.D. Va. Jan. 6, 2026) (Trenga, J.).

The INA designates the following countries as possible places to which an alien can be removed: (i) the country of which the alien is a citizen, subject, or national; (ii) the country in which the alien was born; (iii) the country in which the alien has a residence; (iv) a country with a government that will accept the alien into the country's territory if removal to each country described in a previous clause of this subparagraph is impracticable, inadvisable, or impossible. 8 U.S.C. § 1231(b). And "the Secretary retains discretion to remove an alien to any country

11

described" in the INA." 8 C.F.R. § 241.15(a). On March 30, 2025, the Secretary of Homeland Security issued a memorandum entitled "Guidance Regarding Third Country Removals," in which she outlined the procedures the agency would follow for removal of noncitizens with a final order of removal to third countries.[4] [Doc. No. 8-1] at 1.

Under the INA's implementing regulations, noncitizens, under certain circumstances, are entitled to credible fear or reasonable fear screenings. 8 C.F.R. §§ 208.30(a), 208.31(a). Both parties agree that Petitioner is not entitled to a credible fear screening under 8 C.F.R. § 208.30(a), which applies only to (a) arriving noncitizens who are in expedited removal proceedings under 8 U.S.C. § 1225(b)(1); and (b) noncitizen stowaways under 8 U.S.C. § 1225(a)(2). *See* 8 C.F.R. § 208.30(a). Rather, Petitioner claims he is entitled to a reasonable fear screening and immigration judge review under the rationale provided in 8 C.F.R. § 208.31, which provides for immigration judge review of an asylum office's negative determination of reasonable fear, either through referral by a USCIS asylum officer or at the noncitizen's request, 8 C.F.R. §§ 208.31(a), (e)-(g). As Petitioner concedes, 8 C.F.R. § 208.31, under its plain terms, does not apply to him because it applies only to the expedited removal of noncitizens convicted of committing aggravated felonies (8 U.S.C. § 1228(b)) and those that have a reinstated removal order (8 U.S.C. § 1231(a)(5)). 8 C.F.R. § 1208.31(a). Petitioner is not being removed under 8 U.S.C. § 1228(b), which applies to noncitizens who were convicted of an aggravated felony. Nor is Petitioner subject to a *reinstated* order of removal within the meaning of 8 C.F.R. § 208.31 since the government is relying on the

---

[4] The memorandum does not reference any review by an immigration judge and provides, in relevant part, that "[i]n cases where the [noncitizen] affirmatively states a fear, USCIS will generally screen the alien within 24 hours of referral from the immigration officer. . . . USCIS will determine whether the [noncitizen] would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal. If USCIS determines that the [noncitizen] has not met this standard, the [noncitizen] will be removed." [Doc. No. 8-1] at 2.

one and only removal order issued to Petitioner by an Immigration Judge on July 21, 2017. Therefore, 8 C.F.R. § 1208.31 does not directly govern and does not resolve the question of whether Petitioner is entitled to IJ review of his negative fear determination with respect to removal to Mexico.

Nonetheless, Petitioner contends that he is entitled to Immigration Judge of the asylum officer's negative fear determination with respect to removal to Mexico as a matter of procedural due process. [Doc. No. 1] at 14. The Court agrees. "The procedural component of due process 'imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause.'" *D.B. v. Cardall*, 826 F.3d 721, 741 (4th Cir. 2016), *quoting Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "And when the government deprives a person of a protected liberty or property interest, it is obliged to provide 'notice and opportunity for hearing appropriate to the nature of the case.'" *Id.* at 741–42. As to how much process an individual is constitutionally entitled to, courts apply the familiar *Mathews v. Eldridge* framework that assesses (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Petitioner's private interest to not be removed to a third country where he would face persecution is clearly significant and "is precisely the type of interest that courts consistently have held is significant enough to justify procedural protections to ensure that individuals who are actually entitled to withholding of removal under § 1231(b)(3) or the Convention Against Torture receive such protection." *Cruz Medina v. Noem*, No. 25-CV-1768-ABA, 2025 WL 2841488, at *6

13

(D. Md. Oct. 7, 2025) (collecting cases).

The risk of erroneous deprivation is also undoubtedly high since Petitioner's negative credible fear determination made by a single asylum officer was issued without explanation, raising questions as to whether Petitioner was given a meaningful opportunity to be heard, the very cornerstone of procedural due process. *United States v. Timms*, 664 F.3d 436, 450 (4th Cir. 2012). As the *Cruz Medina* court observed, "[t]he Court need look no further than DHS regulations themselves to conclude that, where a person alleges that he would be persecuted or tortured if removed to a particular country, a single review by an asylum officer creates an unacceptably high risk of erroneous deprivation." *Cruz Medina*, 2025 WL 2841488, at *7 (reviewing numerous examples in the regulations where noncitizens, including those that are subject to expedited removal proceedings, or noncitizens that entered the country illegally after having previously been removed are entitled to de novo review by an immigration judge). Indeed, there is no dispute that if Respondents had identified Mexico as a place for removal (in addition to El Salvador) during Petitioner's removal proceedings, Petitioner would have been entitled to immigration judge review of his claim of fear of removal to Mexico. The fact that Petitioner does not technically satisfy the criteria for mandatory immigration judge review under any of these regulations simply because he is not subject to expedited removal or the reinstatement of a prior removal order does not make the risk of erroneous deprivation any less grave. *See id.* (deferring to "DHS's own longstanding determination that similar circumstances call for providing IJ review to lessen the risk of erroneous deprivation of relief under the withholding statute or the Convention Against Torture.").

Respondents suggest that IJ review remains available to Petitioner because he may file a motion to reopen his removal proceedings. [Doc. No. 8] at 1, 20–21. But as Petitioners lay out, a motion to reopen is not legally available since Petitioner's removal order became final in 2017 and

14

the time to file a motion to reopen (ordinarily ninety days from the final order of removal) has elapsed. 8 U.S.C. § 1229a(c)(7)(C)(i). Moreover, "[s]imply allowing the petitioner to move to reopen their immigration proceedings is not enough to satisfy Due Process—the Government must actually reopen proceedings so that the petitioner has a fair and adequate opportunity to be heard." *Arenado-Borges v. Bondi*, 2025 WL 3687518, at *6 (W.D. Wash. Dec. 19, 2025).

As to the third *Mathews* prong, Respondents' burden of affording IJ review of Petitioner's negative fear determination is minimal, particularly, as discussed above, where the regulations provide such review in several other contexts. Indeed, the Fourth Circuit has recognized that a "reasonable fear review hearing before an IJ is not as comprehensive or in-depth as a withholding of removal hearing, but is instead a review of the asylum officer's decision." *Tomas-Ramos v. Garland*, 24 F.4th 973, 978 (4th Cir. 2022) (cleaned up). Nor does the Court find there to be any separation of powers concerns since, as other courts have noted, "[i]mmigration judge review of the negative fear determination would necessarily occur within the Executive branch, and the Court here does not weigh in on the probability of whether [Petitioner] will be persecuted or tortured in Mexico. *Portela-Hernandez*, 2026 WL 74042, at *12.

In sum, Petitioner is entitled as a matter of procedural to process to immigration judge review of his negative fear determination as described in the regulations governing the analogous context. 8 C.F.R. §§ 208.31, 1208.31.

## IV.    CONCLUSION

For the reasons stated above, it is hereby

**ORDERED** that the Petition be, and the same hereby is, GRANTED; and it is further

**ORDERED** that Petitioner be RELEASED from custody immediately; and it is further

**ORDERED** that Petitioner's Order of Supervision be RESTORED immediately and may

15

not be revoked unless done so in compliance with the requirements of 8 C.F.R. § 241.4; and it is further

ORDERED that Respondents and all of their officers, agents, servants, employees, attorneys, successors, assigns, and persons acting in concert or participation with them are ENJOINED from removing Petitioner from this judicial district and the continental United States unless (1) he has first received review by an immigration judge, pursuant to 8 C.F.R. § 208.31(g), of the United States Citizenship and Immigration Services asylum officer's negative decision regarding whether he has a reasonable fear of persecution or torture if removed to Mexico; and (2) all other requirements of 8 C.F.R. § 208.31(g) have been satisfied.

The Clerk is directed to send copies of this Order to all counsel of record.

February 3, 2026
Alexandria, Virginia

Anthony J. Trenga
United States District Judge

16